1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**DISTRICT OF NEVADA**

9

**\* \* \***

10

STEPHAN LEVESQUE,                          Case No.: 2:09-cv-01393-RLH-LRL

11

             Plaintiff,                          **O R D E R**

12

    vs.                          (Motion to Dismiss Or in the Alternative,
                           to Transfer Venue–#36)

13

TRANS UNION, LLC; EQUIFAX
INFORMATION SERVICES, LLC;

14

EXPERIAN INFORMATION SOLUTIONS,
INC; THE STUDENT LOAN PEOPLE a/k/a

15

KENTUCKY HIGHER EDUCATION
STUDENT LOAN CORPORATION; ACCESS

16

GROUP, INC.

17

             Defendants.

18

19

      Before the Court is Defendant Access Group, Inc.'s **Motion to Dismiss, or, in the**

20

**Alternative, to Transfer Venue** (#36), filed December 3, 2009.  The Court has also considered

21

Plaintiff Stephan Levesque's Opposition (#60), filed May 13, 2010; and Defendant's Reply (#61),

22

filed May 24, 2010.

23

**BACKGROUND**

24

      This dispute arises from Levesque's allegation that Defendants unlawfully reported

25

derogatory and inaccurate information on his credit history to third parties.  In August 2002,

26

Levesque co-signed a private education loan for his niece, Kimberly Wright.  Levesque claims his

AO 72
(Rev. 8/82)

niece made the necessary payments in 2008 and 2009, but Access Group misapplied her payments. Levesque also claims that Defendants reported negative credit information to third parties while the education loan was in forbearance.  Finally, Levesque states that the negative information remains on his credit reports, despite the fact that he disputed the inaccurate information with all Defendants.

Levesque filed suit on July 30, 2009.  On December 3, Access Group moved to dismiss Levesque's claims or, in the alternative, to transfer venue to the United States District Court for the District of Delaware.  (Dkt. #36, Mot.)  Because Levesque failed to oppose the motion, the Court granted it on January 14, 2010.  (Dkt. #45, Order.)  On January 22, Levesque filed a Motion to Set Aside the order and for leave to file a response (#48) to Access Group's motion to dismiss.  On April 30, the Court granted Levesque's motion (Dkt. #59, Order), and on May 13, Levesque responded.  Access Group, in turn, filed its reply on May 24.  For the reasons discussed below, the Court grants Access Group's Motion based on improper venue under Rule 12(b)(3) and orders transfer of the entire case to the District of Delaware under 28 U.S.C. §§ 1404(a) and 1406(a).

## DISCUSSION

Logic compels the Court to address the question of venue prior to analyzing whether Levesque has stated a claim under Federal Rule of Civil Procedure Rule 12(b)(6).  *E.g., Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2nd Cir. 1963).  This is because "a court that lacks jurisdiction or venue should not decide substantive questions" except with good cause.  1 William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 4:40–41 (The Rutter Group 2010).

### I.    Improper Venue

#### A.    Legal Standard

The Ninth Circuit has determined that a district court should analyze a motion to dismiss based on a forum selection clause in a contract under Rule 12(b)(3), which controls

AO 72
(Rev. 8/82)

1  motions to dismiss for improper venue.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th

2  Cir. 1996).  When ruling on a 12(b)(3) motion, the pleadings need not be accepted as true and the

3  court may "consider facts outside the pleadings" such as the loan agreement, cosigner agreement

4  and the statements of terms and conditions relevant in this dispute.  *Murphy v. Schneider Nat'l,*

5  *Inc.*, 362 F. 3d 1133, 1137 (9th Cir. 2003).  Nonetheless, the "court must draw all reasonable

6  inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-

7  moving party."  *Id.* at 1138.

8  **B.    Enforceability of a Forum Selection Clause**

9  In a federal question case, the enforceability of a forum selection clause is controlled

10  by federal law.  *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10–12 (1972).  In *Bremen*, the

11  Supreme Court held that forum selection clauses are presumptively valid.  *Id.*  Forum selection

12  clauses with mandatory forum selection language are routinely enforced in the Ninth Circuit.

13  *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989) (applying the forum

14  selection clause at issue and stating that courts in the Ninth Circuit routinely uphold forum

15  selection clauses).  Here, the forum selection clause states, "I agree that any suit I bring against you

16  or against any subsequent holder of my loan must be brought in a court of competent jurisdiction in

17  the county in which you maintain your (or the county in which subsequent holder maintains its)

18  principal place of business." (Dkt. #36, Mot. Ex. 2, Statement of Loan Terms and Conditions 4,

19  Dec. 3, 2009).  As a subsequent holder of the loan, this facially valid and enforceable provision

20  applies to Access Group.

21  Access Group argues that this forum selection clause limits proper venue to

22  Delaware, where it maintains its principal place of business, requiring the Court to either dismiss or

23  transfer the case.  Even though forum selection clauses are presumptively valid under *Bremen*, the

24  Court also "recognized three reasons that would make enforcement of a forum selection clause

25  unreasonable."  *Murphy*, 362 F.3d at 1140.  The three reasons are: (1) if the clause is the product of

26  fraud or overreaching; (2) if the clause would deprive the opposing party of his day in court; and (3)

3

AO 72
(Rev. 8/82)

if enforcement would contravene a strong public policy of the forum in which suit is brought. *Id.* (citing *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998)). Levesque asks the Court to disregard the forum selection clause that he agreed to because it is unreasonable and overly burdensome. Thus, the Court will analyze these three reasons to determine whether it should enforce the forum selection clause.

### 1.     Fraud, Overreaching and Contravening Nevada Public Policy

Levesque's contentions do not rise to the level necessary to overcome the forum selection clause. Levesque has not made any allegations of fraud or overreaching, though he does claim that he did not see the clause and would not have signed the agreement had he seen it. The Court finds this assertion unpersuasive since Levesque also states that he has entered into nine land sale contracts over the last four years. This indicates that Levesque is, or should be, a sophisticated business person. Undoubtedly, the Court should hold a sophisticated business person responsible for the contents of the contracts he signs. Furthermore, the clause is not unconscionable merely because it was, according to Levesque, boilerplate language in the loan agreement. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991) (enforcing the forum selection clause in a form contract printed on the back of a passenger ticket). Additionally, Levesque has not alleged that enforcement would contravene any strong public policy of the state of Nevada. Therefore, the Court may only reject the clause if its enforcement would deprive Levesque of his day in court.

### 2.     Depriving Levesque of His Day in Court

Levesque argues that enforcement of the forum selection provision would deny him his day in court. When a plaintiff claims that his opportunity to litigate will be denied, prior courts have looked for medical and economic situations that make it nearly impossible for the litigant to proceed in the other forum. *Murphy*, 362 F.3d at 1141–42. To support his contention that he could not proceed in Delaware, Levesque submitted an affidavit describing his health problems. (Dkt.

/

#60, Resp. Ex. 3, May, 13, 2010).  Levesque states that his health began to decline in late December 2009, and in the spring of this year, he was diagnosed with a heart condition requiring him to avoid strenuous activity and stressful environments.  His heart condition requires that he adhere to a strict diet and remain predominantly housebound before he obtains surgery.  Levesque, however, did not submit an affidavit from his doctor supporting these statements.  Levesque further states that litigation in Delaware would be costly, but he does not explain how the cost would be significantly greater than litigating in Nevada or any inability to pay such costs.

Levesque's medical condition does not rise to the level of inconvenience or difficulty that existed in the case Levesque cites.  In *Murphy v. Schneider Nat'l, Inc.*, the plaintiff was disabled while working for the defendant, was living on disability payments, had his vehicle repossessed, had little to no disposable income, could not sit for more than an hour in a confined space, and neither he nor his wife could drive because of their respective disabilities.  362 F.3d. at 1137.  These facts made travel to Wisconsin impossible, or nearly so, and enforcement of the forum selection clause would have deprived them of their day in court.  Levesque's medical condition and economic situation do not rise to this level.  Furthermore, while Levesque's medical condition appears serious, it did not arise until approximately five months after he filed his complaint in the wrong forum.

Regardless of Levesque's current condition, the Court finds that venue was improper at the time he filed his complaint and remains improper still.  Further, Levesque is represented by counsel and it is unlikely that his personal presence would be required in Delaware for any significant amount of time.  Levesque could also request an extension or a delay in the proceedings in Delaware until after his surgery and recuperation, thus allowing him to have his day in court.  The Court therefore finds the forum selection clause reasonable and enforceable.  Accordingly, venue is improper in the District of Nevada.

/

AO 72
(Rev. 8/82)

1

### C. Dismissal or Transfer

2

In its motion to dismiss, Access Group requested dismissal or, in the alternative,

3

transfer to the appropriate venue.  Under 28 U.S.C. § 1406(a), the Court must dismiss a case if

4

venue is improper or "if it be in the interest of justice, transfer such case to any district or division

5

in which it could have been brought."  *Chudner v. Transunion Interactive, Inc.*, 626 F. Supp.2d

6

1084, 1088–89 (D. Or. 2009).  Under 28 U.S.C. § 1404(a), the Court may "transfer any civil action

7

to any other district or division where it might have been brought" for the convenience of the

8

parties and witnesses or in the interest of justice.  Since venue is improper in the District of

9

Nevada, the Court must either dismiss or transfer the case.  *Id*.  The Court finds that transfer to the

10

United States District Court for the District of Delaware is appropriate because Levesque has not

11

shown fraud, a strong contravening policy, or that he would be deprived of his day in court.  As a

12

result, the Court will transfer the whole dispute to the District of Delaware under its § 1404(a)

13

authority to keep all of the parties together in one action.

14

## II.    Motion to Dismiss based on Rule 12(b)(6)

15

In addition to its arguments based on improper venue, Access Group contends that

16

the complaint should be dismissed under Rule 12(b)(6).  Access Group argues that the state law

17

claims Levesque alleges are preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq*.

18

(2006) ("FRCA"), and that Levesque failed to state a valid FCRA claim in his First Amended

19

Complaint.  The Court need not examine these claims in detail based on its decision to transfer

20

venue to the District of Delaware.  Nonetheless, the Court notes that it would likely deny dismissal

21

of the FCRA claim due to the Equifax letter attached to Levesque's First Amended Complaint

22

which states, "Equifax contacted each source directly and our investigation is complete."  (Dkt.

23

#18, Am. Comp. 32, July 30, 2009)  This is likely a sufficient factual assertion that Access Group

24

was contacted by a consumer reporting agency, not merely Levesque, regarding his dispute.  Such

25

contact would trigger Access Group's duties under § 1681s-2(b).  *Marshall v. Swift River Acad.*,

26

AO 72
(Rev. 8/82)

*LLC*, 327 Fed. Appx. 13 (9th Cir. 2009) (stating that only notice from a credit reporting agency triggers § 1681s-2(b) duties).

While the FCRA claim would likely survive in this Court, the same is not true for the Nevada state law claims.  Although the Ninth Circuit has not addressed the preemptive scope of § 1681t(b)(F) and § 1681s-2(b) based state law claims, a number of district courts within the Ninth Circuit have.  These courts favor giving § 1681t complete preemptive force which would thus preempt Levesque's Nevada state law claims.  *Forester v. Pennsylvania Higher Educ. Assistance Agency*, 2009 WL 3710517 (C.D. Cal. Oct 30, 2009); *see also Buraye v. Equifax*, 625 F. Supp.2d 894, 897-901 (C.D. Cal. 2008) (discussing § 1681t preemption and preempting the state law claims).  This Court, while not bound by these decisions, finds them persuasive and agrees with their reasoning.  The Court, however, does not predict how the District of Delaware will handle such claims.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss, or, in the Alternative, to Transfer Venue (#36) is GRANTED.  The Clerk of the Court is instructed to transfer this case to the United States District Court for the District of Delaware.

Dated: September 1, 2010.

_____

**ROGER L. HUNT**
**Chief United States District Judge**

AO 72
(Rev. 8/82)